UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DOMETIC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PAR NADO INC,<br><br>Defendant. | Case No. 3:26-CV-108-CCB-SJF |

# OPINION AND ORDER

Dometic Corporation ("Dometic") sued Par Nado Inc, d/b/a Safari Condo ("Safari"), seeking a declaratory judgment that it is not liable for a recreational vehicle explosion in Canada and that the applicable statute of limitations for any related claims has expired. (ECF 1 ¶¶ 49–56). Safari has moved to dismiss the complaint for lack of personal jurisdiction (ECF 9) and *forum non conveniens* (ECF 11). The Court now rules on both motions.

## I. Relevant Background

On June 5, 2024, an explosion occurred in Canada involving a trailer manufactured by Safari. (ECF 1 ¶¶ 19–20; ECF 9-1 ¶ 13). The trailer contained a model PI8022 cooktop made by Dometic. (ECF 1 ¶¶ 5, 19). Safari blames the explosion on Dometic's cooktop, while Dometic alleges that the cause was Safari's improper installation of the cooktop. (*Id.* ¶ 22). Dometic is a Delaware corporation based in Illinois and is registered to do business in Indiana. (*Id.* ¶ 1). Safari is a Canadian corporation based in Québec. (*Id.* ¶ 2).

The transactions underlying this dispute occurred between 2018 and 2019. (ECF 1 ¶ 10). During this period, Safari bought about 1,700 cooktops from Dometic. (ECF 22-1 ¶ 7). The order and fulfillment process between Safari and Dometic followed a consistent pattern. Safari issued purchase orders to Dometic's Elkhart, Indiana office. (ECF 1 ¶¶ 5, 9). Dometic processed the orders in Indiana and issued order acknowledgments back to Safari. (ECF 22-1 ¶ 10). Dometic then arranged for shipping from its Goshen, Indiana warehouse, sent an invoice with shipment of the goods, and periodically sent statements identifying unpaid invoices. (*Id.* ¶¶ 10, 12). Each invoice and statement provided that all sales were subject to Dometic's Standard Terms and Conditions of Sale, published on its website (the "Terms"). (*Id.* ¶ 18). The Terms contained a forum-selection clause and choice-of-law provision that identified the seller's state of shipment (in this case, Indiana). (ECF 22-3 ¶ 23). Dometic invokes this clause to establish venue in this District, whereas Safari argues the Terms were never incorporated into the parties' agreements.

The cooktops themselves were manufactured and leak-tested at a factory in Italy. (ECF 1 ¶ 25). Dometic maintains that none leaked before delivery. (*Id.*). Dometic delivered an instruction book with each unit, which required installation following American and Canadian safety codes. (ECF 1 ¶¶ 11, 21). It specifically warned that overtightening the connections to the gas regulator could crack the regulator and cause a gas leak. (*Id.* ¶ 17). Safari installed the cooktops into its trailers. The unit involved in the June 2024 explosion was built and sold new in May 2019. (*Id.* ¶ 20).

Following the incident, the dispute steadily escalated. On December 3, 2024, Safari's insurer contacted Dometic, asserting the cooktop caused the fire and seeking reimbursement. (ECF 22-3 ¶¶ 5–6). On April 1, 2025, Safari's counsel sent a letter holding Dometic responsible for the damages. (*Id.* ¶ 7). Finally, on November 4, 2025, Safari sent a letter to Dometic alleging that cooktop defects caused the explosion, demanding that Dometic join the recall and fix the issue, and threatening to sue. (ECF 1 ¶¶ 40–48).

That same month, Transport Canada and the National Highway Traffic Safety Administration ("NHTSA") contacted Dometic about Safari's related recall notices. (ECF 22-4 ¶¶ 2–5). Dometic responded to both agencies to dispute Safari's characterization of the explosion. (*Id.* at 4–16). It maintains that the failures resulted from errors in Safari's installation, such as failing to use required support brackets and cracking the brass fittings by overtightening the unsecured gas lines. (*Id.* at 4). In March 2026, Safari issued a second recall notice identifying a field repair that included adding the missing support brackets. (ECF 22-3 ¶ 20).

After receiving Safari's November 2025 demand letter, Dometic filed this preemptive declaratory action. (ECF 1 ¶¶ 49–56). Safari's motions to dismiss for lack of personal jurisdiction and *forum non conveniens* are now ripe for ruling. (ECF 9, 11).

## II. Analysis

A district court need not reach questions of personal jurisdiction before disposing of an action on *forum non conveniens* grounds when considerations of convenience, fairness, and judicial economy so warrant. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). Resolving the personal jurisdiction challenge here would require a fact-intensive minimum contacts inquiry to determine whether a Canadian buyer's administrative purchasing ties in Indiana can support specific jurisdiction over a tortious explosion in Canada. This Court need not expend judicial resources resolving that constitutional question because the *forum non conveniens* factors decisively favor dismissal.

The *forum non conveniens* inquiry requires courts to first determine whether an adequate alternative forum exists and then balance the private interests of the parties against the public interests of the alternative forums. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 807 (7th Cir. 2016). In conducting this inquiry, the Court may consider evidence beyond the pleadings. *See id.* at 809–10. A valid forum-selection clause makes the private interest factors of *forum non conveniens* "drop out of the equation." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018). Here, Dometic relies on a purported forum-selection clause requiring venue in this District. Thus, the Court must determine the validity of this clause before applying the *forum non conveniens* test.

### A. Forum Selection Clause

Dometic asserts that its invoices and statements incorporated a forum-selection clause by referring to its website Terms. Safari counters that the clause never became

part of the parties' contracts. Therefore, the Court must first resolve the threshold issue of contract formation before deciding whether the clause applies. *See Ridgelawn Cemetery Ass'n v. Granite Res. Corp.*, No. 2:16-CV-370, 2017 WL 3783401, at *2 (N.D. Ind. Aug. 31, 2017).

The parties also disagree on which body of law governs contract formation. Dometic argues that Indiana contract law applies, pointing to the choice-of-law provision within the disputed Terms. Safari maintains that the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, S. Treaty Doc. No. 98-9, 1489 U.N.T.S. 3 ("CISG"), controls. Dometic's reliance on its own Terms is misplaced because a party cannot enforce a provision in a contract before establishing that a valid contract exists. The threshold question of contract formation necessarily precedes the enforcement of any specific terms. *See Green v. Charter One Bank, N.A.*, 640 F. Supp. 2d 998, 1004 n.6 (N.D. Ill. 2009) (citing *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 917–18 (N.D. Ill. 2003)). Applying the Terms' choice-of-law clause at this stage would presume that Safari agreed to the Terms in the first place, which is the very outcome in dispute. The Court must therefore determine the governing law independently of the disputed Terms.

Generally, a federal court sitting in diversity applies the substantive law of the forum state, unless a treaty of the United States requires otherwise. 28 U.S.C. § 1652. The CISG is a self-executing treaty that governs "contracts of sale of goods between parties whose places of business are in different States." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 748 F.3d 780, 787 (7th Cir. 2014) ("*VLM Food Trading I*") (citing CISG art.

1(1)). Here, Dometic and Safari contracted for the sale of goods and have places of business in treaty countries—the United States and Canada, respectively. So the CISG preempts Indiana state law and governs contract formation. *See id.*

Under the CISG, a contract is formed upon valid offer and effective acceptance. *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 251 (7th Cir. 2016) ("*VLM Food Trading II*"). Here, the parties' contracts were fully formed before Dometic ever introduced the forum-selection clause. Each of Safari's purchase orders was a valid offer because they were sufficiently definite and conveyed an intent to be bound. *See* CISG art. 14(1); *VLM Food Trading II*, 811 F.3d at 251. Likewise, each of Dometic's acknowledgments was an effective acceptance because they confirmed the purchase order terms without alteration. *See* CISG art. 18(1); *VLM Food Trading II*, 811 F.3d at 251. Thus, binding contracts were formed the moment Safari received Dometic's acknowledgments. *See* CISG art. 18(2).

The forum-selection clause did not appear in this initial exchange. Dometic only introduced the Terms via invoices sent with the shipment of goods and later billing statements. The contracts were already formed upon Safari's receipt of Dometic's acknowledgments, so the forum-selection clause in those later documents was a proposed modification to the existing agreements. *See VLM Food Trading II*, 811 F.3d at 252. Even if the invoices were construed as part of Dometic's acceptance, the result would be the same. The CISG rejects the flexible "battle of the forms" approach of U.C.C. § 2-207 in favor of a strict common-law "mirror image" rule. *Id.* at 251. Under CISG Article 19, nonmaterial additions in a purported acceptance become part of the

contract unless promptly objected to, whereas material additions—including choice-of-law and forum-selection clauses—do not. *See VLM Food Trading I*, 748 F.3d at 786 (citing CISG art. 19(1)–(3)). Rather, a material addition operates as a rejection and counteroffer. *Id.*

Thus, whether the forum-selection clause is treated as a post-formation modification or a material alteration during acceptance, it cannot become part of the contracts without Safari's affirmative acceptance through statements or conduct. CISG arts. 18(1), 29(1). Evidence of silence or inactivity is insufficient. CISG art. 18(1). Dometic has presented no evidence that Safari made any affirmative statements accepting the modification. On the contrary, Safari's purchase orders expressly instructed Dometic to "[m]ake no substitutions or changes without [Safari's] authorization," suggesting the opposite intent. (ECF 23-1 at 5). Still, Dometic relies on the parties' multi-year course of dealing to argue Safari impliedly consented to the clause when it continued to accept delivery of about 1,700 cooktops after receiving the invoices.

For support, Dometic relies on case law applying U.C.C. § 2-207. As discussed, the CISG preempts state law on formation, so Dometic's authorities involving the U.C.C. are inapposite. Even so, to thoroughly address the substance of Dometic's position, the Court evaluates whether the parties' course of dealing establishes consent under the closest analogous provisions of the CISG—Articles 8(3) and 9(1). Neither provision saves Dometic's argument.

Under Article 8(3), a party's course of dealing only binds the other party if it knew of and shared the same subjective intent at the time of contracting. *VLM Food*

*Trading II*, 811 F.3d at 253 (quoting CISG art. 8(1)). While Dometic clearly intended to litigate disputes in Indiana, there is no evidence that Safari shared this intent. Safari's mere failure to object to previous invoices does not prove its subjective intent to be bound. *See VLM Food Trading II*, 811 F.3d at 253–54.

Similarly, under Article 9(1), a course of dealing only binds the parties if it constitutes a practice "established between themselves." The record shows no established practice between Safari and Dometic regarding forum selection. Unilaterally printing references to the Terms on delivery invoices does not establish a binding practice if the recipient never acknowledges them. *See VLM Food Trading II*, 811 F.3d at 254. Dometic points to Safari repeatedly accepting delivery of goods as evidence of consent. Yet that conduct is just as consistent with Safari's obligations under the original contract as it is with accepting new terms.

This Court addressed a very similar situation in *Robert Weed Plywood Corp. v. Canusa Wood Products, Ltd.*, No. 3:23-CV-30-RLM-MGG, 2023 WL 3057968 (N.D. Ind. Apr. 24, 2023). There, the Court held that a Canadian seller's later invoices referencing website terms were mere proposals to modify the agreement, and the Indiana buyer's silence upon receiving subsequent orders did not demonstrate assent. *Id.* at *1, *5–6. Under the CISG's strict mirror-image rule, "a party's multiple attempts to alter an agreement unilaterally do not so effect." *Id.* at *6 (quoting *Château des Charmes Wines Ltd. v. Sabaté USA Inc.*, 328 F.3d 528, 531 (9th Cir. 2003)).

The same result follows here. Even construing the facts in Dometic's favor, Safari never took affirmative action to consent to new terms under the CISG. Thus, the Terms,

including the forum-selection clause, never became a part of the contracts. Without a valid forum-selection clause, the Court proceeds to the traditional *forum non conveniens* analysis.

### B. *Forum Non Conveniens*

The doctrine of *forum non conveniens* "empowers a court to dismiss a suit when litigating in that court as opposed to an alternative forum unreasonably burdens the defendant." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 357 (7th Cir. 2022) ("*Instituto Mexicano*") (citing *Sinochem*, 549 U.S. at 429–30). To resolve Safari's motion, the Court evaluates whether an adequate and available alternative forum exists, the level of deference owed to Dometic's choice of forum, and the balance of private and public interest factors. *Deb*, 832 F.3d at 807.

#### 1. Adequacy and Availability

Canadian courts are available in this case. A forum is "available" when the defendant is amenable to process and is within the forum's jurisdiction. *Deb*, 832 F.3d at 807. Here, Safari is a Canadian corporation headquartered in Québec and has affirmatively consented to service and jurisdiction there. Dometic argues that it is not amenable to process in Canada, but a plaintiff's amenability to suit in a foreign forum is not relevant to this inquiry. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *Instituto Mexicano*, 29 F.4th at 358.

Québec is also an adequate forum. A forum is "adequate" if "the parties will not be deprived of all remedies or treated unfairly." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 704 (7th Cir. 2005). For the forum to be inadequate, the remedy must be "so clearly

inadequate or unsatisfactory that it is no remedy at all." *Instituto Mexicano*, 29 F.4th at 358 (quoting *Piper Aircraft Co.*, 454 U.S. at 254). Article 142 of the Québec Code of Civil Procedure permits a party to seek a declaratory judgment to resolve obligations. C.Q.L.R. c. C-25.01, art. 142. This is functionally the same procedural vehicle Dometic seeks here. Furthermore, courts in this Circuit have routinely recognized Canadian courts as adequate alternative forums for resolving complex commercial and product-liability disputes. *See, e.g.*, *Tyler Rsch. Corp. v. Envacon, Inc.*, No. 4:19-CV-10-TLS-JEM, 2020 WL 3577762, at *4–5 (N.D. Ind. July 1, 2020); *Roynat, Inc. v. Richmond Transp. Corp.*, 772 F. Supp. 417, 419–20 (S.D. Ind. 1991); *Rotec Indus., Inc. v. Aecon Grp.*, Inc., 436 F. Supp. 2d 931, 934 (N.D. Ill. 2006).

**2. Presumption in Favor of Plaintiff's Choice of Forum**

"[C]ourts ordinarily accord a plaintiff's choice of forum strong deference." *Instituto Mexicano*, 29 F.4th at 357. Yet where a declaratory action anticipates a suit that would otherwise be brought by the opposing party, the plaintiff's forum choice is entitled to reduced deference. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). Safari remains the natural plaintiff here because it asserts the underlying grievance regarding any defect in the cooktops and errors in installation.

Dometic attempts to preserve the deference owed to its forum choice by arguing that Safari's delay in suing caused prejudice and reputational harm, thereby justifying this preemptive filing under *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572 (7th Cir. 1994). This argument conflates the propriety of filing a declaratory action with the *deference* owed to the choice of forum. *NUCOR* establishes

that a plaintiff facing ongoing harm may file a declaratory action without it being dismissed as an improper race to the courthouse. *Id.* at 579. But a proper motive for filing does not transform Dometic into the natural plaintiff. Safari still holds the underlying substantive grievance regarding the product defects and subsequent recalls.

Furthermore, where the conduct and events giving rise to the cause of action occurred largely outside the plaintiff's selected forum, the "plaintiff's preference has minimal value." *Dunn v. Soo Line R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994); *Deb*, 832 F.3d at 806. The cooktops were built and leak-tested in Italy. The physical installation of the cooktops, the trailer explosion, and the subsequent investigations all occurred in Canada. While Dometic highlights the involvement of the NHTSA, Safari's initiation of a U.S. vehicle recall from its Canadian headquarters does not tie this dispute to Northern Indiana specifically. None of the operative facts giving rise to this liability dispute occurred in Northern Indiana. Thus, Dometic's chosen forum is entitled to little weight because this is a preemptive declaratory action regarding a foreign-centered dispute.

**3. Private Interest Factors**

The private interest factors include "(1) relative ease of access to sources of proof; (2) availability of compulsory process and costs for attendance of witnesses; (3) possibility of viewing the premises, if appropriate; and (4) other practical issues, including the ease of enforcement of any ultimate judgment." *Instituto Mexicano*, 29 F.4th at 359 (quoting *Deb*, 832 F.3d at 807). These factors strongly favor Québec.

Québec offers substantially easier access to material sources of proof. While Dometic frames this action as a dispute over contractual liability and warranties, resolving those legal questions requires determining *why* the products failed. Thus, the merits of this dispute center on whether the cooktops failed because of a manufacturing defect or because Safari improperly installed them. Testing these competing theories of causation requires evaluating the physical condition of the installed units, Safari's installation methods, torque practices, and post-installation leak testing. More importantly, it requires access to evidence outside of either party's control. The physical remnants from the trailer explosion and local Canadian investigative reports are concentrated in Québec. While Safari could theoretically produce its own internal installation records in Indiana, a federal court in Indiana cannot easily compel the production of third-party Canadian physical evidence. Therefore, the access to proof factor strongly favors Québec.

Dometic notes that affected vehicles are scattered throughout the United States and Canada. Yet the mere presence of end-products in the U.S. stream of commerce does not alter the fact that the evidence regarding the assembly and failure of the products is centered in Canada. Furthermore, to the extent Dometic's design and manufacturing processes are implicated, the cooktops were built by Dometic's sister company in Italy. (ECF 22-3 at 15). That evidence is equally foreign to both proposed forums. Dometic's only true Indiana-based evidence consists primarily of electronic purchase-order processing and invoicing records. As the Seventh Circuit has noted, electronic records are "readily produced in either forum" and do not tie a case to the

plaintiff's chosen district. *Instituto Mexicano*, 29 F.4th at 359. Thus, this factor favors Québec.

It is also easier to compel the presence of witnesses in Canada. Litigating the alleged explosion in Canada and subsequent recall will require testimony from independent Canadian RV end-users, Canadian incident investigators, Canadian first responders, Canadian insurers, and Transport Canada personnel. This Court lacks the power to compel these foreign non-parties to testify. Dometic attempts to neutralize this factor by arguing that the U.S. recall involves U.S. end-users who could serve as witnesses. This argument is unpersuasive. The central dispute in this case is over causation and requires testimony from the engineers, installers, and third-party investigators of the primary incident in Canada. Tangential testimony from U.S. consumers who own the recalled vehicles cannot substitute for direct investigative evidence. Finally, requiring a few party witnesses to travel to Canada is far less burdensome than litigating in Indiana without compulsory process over critical, non-party Canadian witnesses. *See Black & Decker Corp. v. Vermont Am. Corp.*, 915 F. Supp. 933, 939 (N.D. Ill. 1995).

If a physical inspection becomes necessary, the relevant premises are Safari's Québec manufacturing facility, its installation stations, and the remnants associated with the alleged explosion. These are all located in Canada. Dometic suggests that RVs on the road in the United States could also be viewed, but inspecting a random vehicle would not resolve the specific questions regarding Safari's factory assembly practices. While modern photography and expert video analysis make physical jury inspections

exceedingly rare, to the extent this factor applies, it tips slightly toward Québec where the integration of the product occurred.

Finally, practical considerations are neutral. Safari asserts that service files, factory investigation materials, recall records, and local witness testimony originating in Québec will largely be in French. That said, Safari operates internationally and provided no concrete estimate of the volume of foreign-language discovery or the anticipated translation costs. Under *Abad v. Bayer Corp.*, 563 F.3d 663, 669 (7th Cir. 2009), the absence of evidence regarding these relative burdens neutralizes the effect that translation might have had. Similarly, Safari argues that a judgment here would create cross-border enforcement and comity complications. But Dometic seeks only a declaratory judgment of non-liability. Such a declaration would not affirmatively order Safari to alter its Québec assembly practices or interfere with Transport Canada's regulatory mandate. Enforceability is therefore not a barrier in either forum. While these practical considerations are neutral, they do not overcome the weight of the other private interest factors. Given that the relevant physical evidence and most material, non-party witnesses are in Canada, the private interest factors strongly favor dismissal.

**4. Public Interest Factors**

The public interest factors include "(1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening

citizens in an unrelated forum with jury duty." *Instituto Mexicano*, 29 F.4th at 360 (internal quotation marks omitted).

The "administrative difficulties" factor is neutral. This factor concerns the "speed with which a case can come to trial and be resolved" in both the current and alternative forum. *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958–59 (7th Cir. 2007). Neither party has presented meaningful comparative evidence regarding court congestion or time-to-trial metrics in the Northern District of Indiana versus the alternative forum in Québec. Accordingly, this consideration does not tilt the scales in either direction. *See Abad*, 563 F.3d at 672.

Québec has a substantially greater interest in this case. The core of this controversy involves the safe manufacture, installation, and use of products incorporated into Canadian-built trailers, allegedly culminating in an explosion that occurred in Québec. Thus, Québec has a direct, sovereign interest in regulating vehicle-manufacturing practices, determining accident causation, and ensuring consumer protection within its borders.

Dometic attempts to anchor this dispute to Indiana by relying on its local order-processing and shipping activities, nationwide sales figures, and a federal safety recall. This approach misunderstands the local interest inquiry. First, Dometic's order fulfillment activities do not create a localized interest because this dispute does not arise from the shipping or fulfillment process. The operative question is why the cooktops failed. The mere generation of invoices and shipping from Indiana does not vest this District with a substantial interest in a physical failure that occurred elsewhere. *See, e.g.*,

*Tyler Rsch. Corp.*, 2020 WL 3577762, at *8 (concluding that the local interest favored Canada over this District where the conduct giving rise to the dispute occurred abroad); *see also Instituto Mexicano*, 29 F.4th at 360–61 (focusing the local interest inquiry on the jurisdiction where the actionable conduct and alleged injury occurred, rather than the domestic party's administrative or corporate ties to the forum).

Second, while Safari's defect theory may implicate 32,000 other cooktops and 145 recalled RVs across the United States, Dometic has not identified a single Indiana RV owner, Indiana accident, or Indiana service provider connected to this litigation. Finally, a U.S. safety recall implicates a generalized national interest, not a localized Northern Indiana interest that overrides Québec's sovereign interest in an explosion within its borders.

The choice-of-law and foreign-law factors also favor dismissal. *See Instituto Mexicano*, 29 F.4th at 361 ("[T]he 'need to apply foreign law point[s] towards dismissal.'" (quoting *Piper Aircraft Co.*, 454 U.S. at 260) (second alteration in original)). As established above, the CISG governs the parties' contract formation, not Indiana law. To the extent Dometic relies on *Kamel v. Hill-Rom Co.*, 108 F.3d 799 (7th Cir. 1997), to argue its Indiana-based "ongoing business relationship" compels the application of domestic law, that argument is unavailing. First, the state-level choice-of-law framework applied in *Kamel* is preempted here by the CISG with respect to the parties' sales contracts. *See VLM Food Trading I*, 748 F.3d at 787. Second, even under a traditional Indiana choice-of-law analysis for tort and product-liability claims, the application of foreign law remains unavoidable. Under Indiana's *lex loci delicti* rule, the substantive

law of the place where the tort was committed governs, which is the place where the last event necessary to make an actor liable occurred. *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004). Here, the product integration, explosion, and subsequent property damage all occurred in Québec. So, resolving the parties' competing theories of fault will require applying Québec tort law.

Dometic also points to potential U.S. consumer claims and the U.S. safety standards printed in its instruction manuals to argue domestic law should govern. Neither argument is convincing. First, the theoretical possibility of future U.S. litigation does not change the choice-of-law analysis for the claims before this Court. The only accrued injury in this action is the June 2024 explosion in Québec and the resulting Canadian property damage, so resolving this dispute will require applying Québec law regardless of what law might govern hypothetical future lawsuits. Second, a product manual detailing installation standards is a source of factual evidence, not substantive law. Whether Safari's assembly practices complied with the manual—and whether any failure to do so led to the safety issues—are factual questions concerning conduct that occurred in Québec. A Québec court is well positioned to evaluate that evidence while applying its own civil law. *See Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847, 871 (7th Cir. 2015) ("The application of foreign law—particularly that of a civil law system—favors dismissal in favor of a [foreign] forum.").

As for jury duty, this factor largely folds into the local interest factor discussed above. *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d at 959 ("[T]he burdens of jury duty are closely linked with the local interest in the litigation."). Given

that the Northern District of Indiana has little local interest in this case, this factor favors Québec.

## III. Conclusion

For the reasons above, Safari's Motion to Dismiss for *Forum Non Conveniens* (ECF 11) is **GRANTED**. This action is **DISMISSED WITHOUT PREJUDICE**. Safari's Motion to Dismiss for Lack of Personal Jurisdiction (ECF 9) is **DENIED as moot**. The Clerk is **DIRECTED** to close this case.

SO ORDERED on October 27, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT